1
2
3
4
5                    IN THE UNITED STATES BANKRUPTCY COURT

6                       FOR THE DISTRICT OF ARIZONA

7

8                                          │ Chapter 7
9  James Paul Abner and Christina Denise   │ Case No. 08-05067-SSC
   Abner,                                  │
10                                         │ Adv. No. 08-ap-00525
11                                         │ (Not for Publication- Electronic Docketing
                                           │ ONLY)
12                             Debtor.      │
                                           │ MEMORANDUM DECISION
13

14                             I. INTRODUCTION

15         This matter comes before the Court on a "Complaint to Except Debt from

16  Discharge" filed with the Court on August 1, 2008 by  Rehabilitation Finance, LLC

17  ("Rehabilitation" or "Plaintiff").  An Answer was filed by James and Christina Abner (the

18  "Defendants") on September 10, 2008.

19         After conducting a trial on the matter on May 13, 2009,  the Court, at the request

20  of the parties, deemed the matter under advisement.  This Decision shall constitute the Court's

21  findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, Bankruptcy Rule 7052.

22  The Court has jurisdiction over this matter, and this is a core proceeding.  28 U.S.C. §§ 1334 and

23  157 (West 2009).

24

25                         II.  FACTUAL BACKGROUND

26         Rehabilitation Finance, LLC, the Plaintiff, operates a debt relief and debt

27

28                                     1

1  management company which extends loans to many of its customers for use in investment and

2  development properties.  L. Burke Files, one of the principals of the Plaintiff, introduced Albert

3  Lundstrom, the other principal, to a Bruce Goldman.  Mr. Lundstrom described Mr. Goldman, at

4  trial, as being an "intelligent, creative man" someone who could find investment opportunities

5  and was a "go-between" for parties trying to arrange an investment.

6          Mr. Lundstrom testified that in the summer of 2005, Mr. Abner and Robert

7  Herrera desired to acquire the real property located at 3540 West New River Road, New River,

8  Arizona 85087-8244 for future development, along with the 1034 East Cloud property located in

9  Phoenix, Arizona.  The parties also contemplated developing, at some point, the property along

10  the I-17 corridor.  The proposed seven-acre parcel of real property consisted of three separate

11  parcels of land.[1]  A house was on one of the Cloud property, but the proposal was to purchase the

12  entire parcel, sell the lots constituting the New River parcel, and build or remodel the house on

13  the Cloud parcel.  However, Messrs. Abner and Herrera needed financing to proceed with the

14  project.  In the summer of 2005, Mr. Goldman introduced Mr. Lundstrom to Messrs. Abner and

15  Herrera about an investment opportunity.  The parties discussed the ability to purchase and then

16  develop the seven-acre parcel.

17          Mr. Lundstrom testified that at the meeting, Mr. Herrera presented himself as a

18  successful businessman in the construction business who had also successfully developed parcels

19  of real property.  In turn, Mr. Abner advised Mr. Lundstrom that he was in the construction

20  materials business and utilized the materials from his business in the construction of new homes

21  or to remodel existing homes. The Plaintiff decided to provide Messrs. Abner and Herrera with

22  the sum of $120,000,[2] with Messrs. Abner and Herrera to execute a promissory note in the

23  original principal amount of $120,000, which was to be secured by two deeds of trust, one on the

24

25      **1.** The parcels were labeled "Cloud," "New River," and "I-17-Hayward."

26      **2.** At one point, Mr. Lundstrom testified that the Plaintiff advanced the sum of $106,000.
    However, all of the relevant documents refer to the sum of $120,000 as being advanced to Mr.

27  Abner and Mr. Herrera.

28                                              2

1  New River property, the other on the Cloud property.[3]  Apparently Mr. Lundstrom provided Mr.

2  Goldman with the funding, but told Mr. Goldman not to deliver the check to Messrs. Abner and

3  Herrera until the promissory note and the deeds of trust had been executed, and the deeds of trust

4  had been notarized and recorded.  Mr. Lundstrom testified that Messrs. Abner and Herrera were

5  to use the financing to perform the necessary survey to subdivide the property.  The deeds of

6  trust and promissory note were returned to Mr. Files.

7            Mr. Lundstrom testified that he visited the New River property at the time the

8  financing was provided to Messrs. Abner and Herrera and determined that the property was in an

9  area with mountain views, with new construction in the vicinity.  The property was zoned to

10  allow for horses on the property.  He also visited the Cloud property, which was in a developed

11  neighborhood, also zoned for horses, with a house in "very good shape."  He felt that it would

12  not be too expensive to remodel the house on the Cloud property.  At least as to the New River

13  property, the property would need to be surveyed if Messrs. Abner and Herrera intended to

14  subdivide it.  However, after the funding was provided, Mr. Lundstrom became concerned when

15  nothing seemed to be done at the New River property.  He asked Messrs. Abner and Herrera for

16  the name of the surveyor, but no information was ever provided.

17            In December 2005, the promissory note executed by Messrs. Abner and Herrera

18  was about to mature.  The surveyor had not completed his work, so Mr. Lundstrom paid the

19  surveyor one-half of his fee.  Mr. Lundstrom testified that if the survey were not done, there

20  would be no way to determine if the New River property could be subdivided as contemplated

21  by the parties.  The house also needed to be remodeled on the Cloud property, or there would be

22  insufficient funding from the New River property to repay the promissory note.

23            On December 6, 2005, the promissory note matured.  No payment was received

24  by the Plaintiff.  Subsequently Mr. Herrera executed a new promissory note in the principal

25  _____

26  **3.** *See* Exhibit 49 for both of the deeds of trust.  One deed of trust was for the Cloud
   property; the other for the 3540 West New River Road property.  Although Mr. Abner's name is

27  listed on each deed of trust, only Mr. Herrera initialed, but did not execute, each document.

28                                          3

1  amount of $138,000, which was to mature on May 6, 2006.  Mr. Abner never executed the

2  promissory note.[4]

3          Around March 6, 2006, the Plaintiff retained an attorney to assist them in the

4  collection of the promissory note.  Mr. Lundstrom testified that the attorney was retained to

5  assist the Plaintiff in settling any disputes with Messrs. Abner and Herrera.  At this time, it

6  appears that Plaintiff's counsel at least forwarded settlement document to Mr. Herrera for

7  signature, although there is nothing in the record to reflect that Mr. Herrera ever executed any

8  documentation.[5]  Ultimately, on October 31, 2006, the Plaintiff obtained a default judgment

9  against Mr. Herrera in the prinicpal amount of $201,157.50, with interest to accrue at the rate of

10 10 percent per annum.[6]

11          When Mr. Lundstrom subsequently investigated the title to the New River

12 property, he discovered that Messrs. Abner and Herrera had not owned the property at the time

13 that the Plaintiff had loaned Abner and Herrera the sum of $120,000.  He discovered that Mr.

14 Herrera did not acquire title to the property until almost two weeks later by warranty deed dated

15 September 19, 2005.[7]  Mr. Lundstrom testified that he never would have allowed the Plaintiff to

16 loan money to Messrs. Abner and/or Herrera if he had known that the individuals did not own

17 the New River property.

18          Mr. Abner disagreed with the factual statements made by Mr. Lundstrom.  For

19 instance, Mr. Abner testified that he did not meet Mr. Lundstrom until November 2005

20 concerning the Cloud and New River properties.  However, the evidence is inconsistent with Mr.

21

22      **4.** *See* Exhibit 16.

23
      **5.** *See* Exhibit 47.  The settlement agreement provided for Herrera to execute a warranty
24   deed to transfer the 3540 West New River Road, New River, Arizona property to the Plaintiff.
     None of these documents is executed.
25

26      **6.** *See* Exhibit 34.

27      **7.** *See* Exhibit 15.

28                                              4

1 Abner's recollection of what transpired. For instance, the promissory note that he and Mr.

2 Herrera executed in favor of the Plaintiff had a date of September 7, 2005.[8] This note was also

3 executed before a notary public on the same date of September 7, 2005.[9] It also appears that Mr.

4 Herrera initialed a deed of trust concerning the 3540 West New River Road, New River,

5 Arizona property and the 1034 East Cloud, Phoenix, Arizona property on the same date before

6 the same notary.[10] Interestingly enough, Mr. Herrera did not execute the deed of trust at the

7 signature line on either document.[11] Mr. Abner did not initial or execute either of the deeds of

8 trust, although his name was on both documents.[12] Mr. Abner has no clear recollection of being

9 at the notary's office on September 7, 2005.

10       The Court concludes that, based upon this record, Messrs. Abner and Herrera

11 executed a promissory note before a notary public on September 7, 2005. Mr. Abner executed

12 the promissory note, so that he could obtain funding from the Plaintiff to assist in the

13 development of several parcels of real property. Mr. Abner has provided no other explanation as

14 to why he executed said note in favor of the Plaintiff. Therefore, although Mr. Abner has no

15 recollection of meeting with Mr. Lundstrom prior to November 2005, it is clear that Mr. Abner

16 was aware that he was obtaining financing from the Plaintiff to pursue the development of the

17 New River and Cloud properties which were clearly described in the promissory note that he

18 executed. Moreover, although Mr. Abner has a recollection that, in November 2005, he met with

19 Mr. Lunstrom to discuss the fact that Mr. Goldman had been involved in fraudulent conduct,

20 with Mr. Goldman misrepresenting to the parties that he was a mortgage loan officer and a

21

22       **8.** *See* Exhibit 11.

23       **9.** Id. Also *See* Exhibit 51, which is the notary's complete book and reflects that Messrs.
Abner and Herrera appeared before her on September 7, 2005 to execute the note.
24

25       **10.** *See* Exhibits 49 and 51.

26       **11.** *See* Exhibit 49.

27       **12.** *See* Exhibit 9.

28                                             5

1  lawyer to obtain funds from innocent third parties, it is possible that this was a follow-up

2  meeting that Mr. Abner had with one or more principals of the Plaintiff.  The Court concludes

3  that Mr. Abner clearly knew that he was obtaining financing form the Plaintiff in the amount of

4  $120,000 in September 2005.

5         Mr. Abner also testified that he was really a teacher at the time of the loan

6  transaction, and was not really involved in the real estate business.  However, the exhibits

7  support Mr. Lundstrom's testimony that Mr. Abner was involved in the real estate business in

8  September 2005.[13]  Moreover, as noted previously, Mr. Abner offered no other plausible

9  explanation as to why he executed the promissory note in September 2005 in favor of the

10  Plaintiff.

11         Although Mr. Lundstrom testified as to his concern that Mr. Herrera did not own

12  the New River property when the Plaintiff advanced the funds to Messrs. Abner and Herrera,

13  there is nothing in the record to reflect that Mr. Abner was aware of Mr. Herrera's lack of

14  ownership of the New River property and somehow misrepresented that fact to the Plaintiff.  It

15  also appears that Mr. Herrera had been negotiating for quite some time to acquire the New River

16  property, starting as early as June 2005, with a June 23, 2005 closing date.[14]  Thus, Mr. Herrera

17  may have misrepresented his ownership interest in the New River property to both Mr. Abner

18  and the Plaintiff.  The Court concludes that Mr. Abner did not make any material

19  misrepresentations to Mr. Lundstrom or to the Plaintiff concerning the ownership of the New

20

21

22  **13.**  For instance, Exhibit 46 reflects that Mr. Abner was engaged in the real estate
   business as to Haywood Property Management LLC from August 25, 2005 through June 2007.
23  He was at least contemplating another business under the name of "Tierra Verde Group, LLC."
   *See* Exhibit 48.

24

25  **14.**  Exhibit 7 has the original offer from Mr. Herrera to the then owners of the New
   River property, with a proposed closing date of June 23, 2005.  There was a change to the
26  escrow instructions in early July 2005. *See* Exhibit 8.  Mr. Herrera acquired the property by
   Warranty Deed dated September 19, 2005, which appears to have been recorded on September
27  22, 2005. *See* Exhibit 15.

28                                          6

1  River property.[15]

2        It does appear that no payments were made on the promissory note to the

3  Plaintiff. On January 13, 2006, Mr. Herrera executed a new promissory note in favor of the

4  Plaintiff in the amount of $138,000, which refers to the fact that it is secured by the New River

5  property.[16] Mr. Abner did not execute this note. At least at this point, the Plaintiff should have

6  been aware that there was some disagreement as to the responsible party for the underlying debt.

7  By March 2006, Messrs. Abner and Herrera were clearly advising the Plaintiff that Mr. Abner

8  was no longer involved in the development project and no longer responsible for the underlying

9  obligation which had increased, as of March 2006, to approximately $138,000.[17] Of course,

10  there is nothing in the record to reflect that the Plaintiff ever agreed to release Mr. Abner from

11  the original obligation as evidenced by the promissory note from September 2005.

12        Mr. Files, the other principal of the Plaintiff, testified that he did a background

13  check of both Messrs. Abner and Herrera before the Plaintiff entered into the development

14  transaction in September 2005. He conceded that there were no problems with either individual

15  at the time. He also conceded that he did not run a title search, or request that a third party run a

16  title search, on the Cloud or New River properties.

---

19  **15.** There is nothing in the record to reflect that Mr. Herrera made any
misrepresentations as to the Cloud property. He owned the Cloud property at the time the parties
20  entered into their development transaction. *See* Exhibit 6. Mr. Herrera acquired the Cloud
property in 2004.

22  **16.** *See* Exhibit 16. This note was also notarized. However, a different notary was used
on this note.

24  **17.** *See* Exhibits 18, 20, and 21. First, Mr. Herrera stated that Mr. Abner had no business
interest in the property "involved in the disputed loan." Next, Mr. Abner took a deed of trust
referring to the New River property and crossed out his name wherever it appeared on the
25  document. Finally, Mr. Herrera executed a warranty deed transferring the New River property to
the Plaintiff, apparently in settlement of the controversy between the parties. Exhibits 19 and 51
26  reflect that Messrs. Abner and Herrera returned to the original notary who had notarized the
27  promissory note and deed of trust in September 2005.

28                                      7

| | |
|---|---|
| 1 | <div align="center">III. DISCUSSION</div> |
| 2 | The Plaintiff requests that its debt be excepted from discharge pursuant to 11 |
| 3 | U.S.C. §§ 523(a)(2), and (6).  The Plaintiff argues that discharge is not appropriate in this case |
| 4 | because the Defendant obtained the debt through fraud.  According to the Plaintiff, the |
| 5 | Defendant made various representations, upon which the Plaintiff justifiably relied, resulting in |
| 6 | the Plaintiff advancing the Defendant the sum of $120,000. |
| 7 | The Court finds that based upon the totality of the circumstances, the Defendant's |
| 8 | actions do not rise to the level of fraud contemplated in Section 523, Subsections (a)(2) and (6). |
| 9 | Therefore, the Court finds that the Plaintiff's debt is discharged. |
| 10 | |
| 11 | A. DISCHARGE UNDER § 523(a)(2) |
| 12 | Pursuant to 11 U.S.C. § 523(a)(2)(A), a monetary debt is nondischargeable "to the |
| 13 | extent obtained by false pretenses, a false representation, or actual fraud."  In the Ninth Circuit, |
| 14 | to prove nondischargeablity under §523(a)(2)(A), the Plaintiff  needs to show that "(1) that the |
| 15 | debtor made the representations; (2) that at the time he knew they were false; (3) that he made |
| 16 | them with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably |
| 17 | relied on such representations; and (5) that the creditor sustained alleged loss and damage as the |
| 18 | proximate result of such representations." In re Sabban, 384 B.R. 1 (9th Cir. BAP 2008); In re |
| 19 | Diamond, 285 F.3d 822 (9th Cir. 2002); In re Slyman, 234 F.3d 1081 (9th Cir. 2000); In re Ettell, |
| 20 | 188 F.3d 1141, 1144 (9th Cir. 1999); In re Hashemi, 104 F.3d 1122, 1125 (9th Cir. 1996); In re |
| 21 | Eashai, 87 F.3d 1082 (9th Cir. 1996).  The Plaintiff must establish the nondischargeability of a |
| 22 | debt  by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654, |
| 23 | 657-58, 112 L.Ed.2d 755 (1991). |
| 24 | For a debt to be excepted from discharge, the debtor must actually intend to |
| 25 | defraud the creditor In re Tsurukawa, 258 B.R. 192 (9th Cir. BAP 2001).  However, direct |
| 26 | evidence of an intent to deceive is rarely shown.  Hence, intent may be "inferred and established |
| 27 | |
| 28 | <div align="center">8</div> |

1  from the surrounding circumstances." In re Hultquist, 101 B.R. 180 (9th Cir. BAP 1989); In re

2  Anastas, 94 F.3d 1280 (9th Cir. 1996); In re Dakota, 284 B.R. 711 (Bankr.N.D.Cal. 2002).  The

3  court must consider whether the totality of the circumstances paints a picture of deceptive

4  conduct by the debtor that indicates an intent to deceive the creditor.  In re Basham, 106 B.R.

5  453, 457 (Bankr.E.D.Va.1989). Because no single objective factor is dispositive, the assessment

6  of intent is, thus, left to the fact-finder. In re Jacks, 266 B.R. 728 (9th Cir. BAP 2001).  The

7  intent to defraud a creditor is a finding of fact. In re Rubin, 875 F.2d 755, 759 (9th Cir. 1989).

8          The Court should consider the debtor's conduct at the time of the representations

9  and may consider subsequent conduct to the extent that it provides an insight into the debtor's

10  state of mind at the time of the representations. In re Zack, 99 B.R. 717 (Bankr. E.D. Va. 1989);

11  In re Basham, 106 B.R. 453, 457 (Bankr.E.D.Va.1989).

12          In this case, there is nothing in the record to reflect that Mr. Abner made any

13  misrepresentations about the New River or Cloud properties, or that he intended to defraud the

14  Plaintiff.   As to the Cloud property, Mr. Herrera owned that property at the time the parties

15  engaged in their initial conversations concerning the development of the three parcels in

16  September 2005.  In addition, there is nothing in the record to reflect that Mr. Abner was aware

17  of Mr. Herrera's lack of ownership of the New River property. So it is possible that Mr. Herrera

18  may have misrepresented his ownership interest in the New River property to both the Plaintiff

19  and Mr. Abner. This is seems feasible in light of the fact that Mr. Herrera had been negotiating

20  the purchase of the New River property since June 2005.

21          Although it is correct that Mr. Herrera never executed any of the deeds of trust

22  concerning the New River and Cloud properties in September 2005, there is no indication that

23  Mr. Abner represented that he owned either property so that his signature would be necessary on

24  the deeds of trust.  It is clear that Mr. Abner executed the promissory note in favor of the

25  Plaintiff in September 2005.  Although the note states that it is secured by the New River and

26  Cloud properties, there is no representation in the note that Mr. Abner owns the properties.

27

28                                                          9

1  Thus, although it appears that Mr. Herrera made a misrepresentation as to his ownership interest

2  in the New River property, the Court does not see a basis to transfer that misrepresentation to

3  Mr. Abner.

4          Assuming *arguendo* that Mr. Abner made the requisite false representations with

5  the intent to deceive the Plaintiff, the Plaintiff must also show that it justifiably relied on these

6  representations. The Supreme Court has held that a creditor's reliance on a debtor's

7  misrepresentation or omission need be only justifiable, not reasonable, to except a debt from

8  discharge under § 523(a)(2)(A). Field v. Mans, 516 U.S. 59, 116 S.Ct. 437, 439, 133 L.Ed.2d

9  351 (1995).  Prior to the Supreme Court's decision in Field v. Mans, the Ninth Circuit repeatedly

10 held that creditors must prove "justifiable reliance" in exception- to- discharge cases.  In re

11 Kirsh, 973 F.2d 1454, 1458-1460 (9th Cir.1992); In re Apte, 180 B.R. 223 (9th Cir. BAP 1995).

12 In In re Apte, the Bankruptcy Appellate Panel explained the meaning of justifiable reliance:

13

14         The general rule is that a person may justifiably rely on a representation even if the
        falsity of the representation could have been ascertained upon investigation. In other
        words, negligence in failing to discover an intentional misrepresentation is no defense.

15     However, a person cannot rely on a representation if he knows that it is false or its falsity
        is obvious to him. In sum, although a person ordinarily has no duty to investigate the

16     truth of a representation, a person cannot purport to rely on preposterous representations
        or close his eyes to avoid discovery of the truth.

17

18 Id. at 229 (internal citations and quotations omitted).

19         "Justifiable reliance," which a creditor must demonstrate in order to prevail on a

20 complaint to except the debt from discharge as one for money obtained by a debtor's fraud is not

21 a standard that is based upon the average reasonable person.  It is a more subjective standard that

22 takes into account the knowledge and relationship of the parties themselves.  In re Kirsh, 973

23 F.2d 1454, 1458-1460 (9th Cir.1992);  In re Dakota, 284 B.R. 711 (Bankr.N.D.Cal. 2002). The

24 Court needs to look at all the circumstances surrounding a particular transaction.

25         The Plaintiff is a debt-relief and debt-management company, which is in the

26 business of providing loans to third parties for development purposes.  It is presumed to have a

27

28                                                    10

1    level of sophistication in real estate investment opportunities.  Indeed, Mr. Files, on behalf of the

2    Plaintiff, had the specific duty of investigating any potential customers to whom the Plaintiff

3    wished to advance funds.  Mr. Files, a principal of the Plaintiff, testified that he conducted a

4    background check of Messrs. Abner and Herrera, which reflected no problems with either

5    individual.  This supports Mr. Abner's testimony that he was not involved in fraudulent conduct.

6    Moreover, the Plaintiff could have obtained a title report on the New River and Cloud properties,

7    since it was in the business of advancing funds for real estate investment, but chose not to

8    proceed in that manner.  The Plaintiff's business operations were such that there is no plausible

9    explanation for relying on Mr. Herrera's word alone rather than doing a title search, or having

10    some other party perform a title search, of the Cloud and New River properties.  Therefore, the

11    Court concludes that given the Plaintiff's expertise in the area of financing, the Plaintiff did not

12    justifiably rely on the representations of Messrs. Abner or Herrera, to the extent that there were

13    any, as to the ownership of the Cloud and New River properties. Accordingly, the Plaintiff's

14    claim for relief under 523(a)(2)(A) is denied.

15

16    B. DISCHARGE UNDER § 523(a)(6)

17          11 U.S.C. § 523(a)(6) prevents discharge from any debt "for willful and malicious

18    injury by the debtor to another entity or the property of another entity." Banks v. Gill

19    Distribution Centers, Inc., 263 F.3d 862 (9th Cir. 2001).  The Supreme Court held this to require

20    a "deliberate or intentional injury, not merely a deliberate or intentional act which causes injury."

21    Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Moreover, under

22    Lockerby v. Sierra, 535 F.3d 1038 (9th Cir. 2008), the Court must find that the debtor engaged in

23    some form of "tortious conduct."  If the court is able to find such conduct, then the court

24    determines whether the debtor's conduct was both "willful" and "malicious."

25          A debtor's actual knowledge is the focus of the willfulness inquiry under §

26    523(a)(6). "[T]he subjective standard correctly focuses on the debtor's state of mind and

27

28                      11

1  precludes application of § 523(a)(6)'s nondischargeability provision short of the debtor's actual

2  knowledge that harm to the creditor was substantially certain." In re Thiara 285 B.R. 420 (9th

3  Cir.BAP 2002) (citing Su v. Carrillo (In re Su), 259 B.R. 909, 914 (9th Cir. BAP 2001), aff'd,

4  290 F.3d 1140 (9th Cir.2002)).  In addition, the injury must be "malicious." This means that it

5  must also be a wrongful act, done intentionally, which necessarily causes injury, and which is

6  done without just cause or excuse. Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th

7  Cir.2001), cert. denied.

8            In this case, the facts do not suggest that Mr. Abner engaged in any form of

9  tortious conduct. The Plaintiff failed to provide any evidence that Mr. Abner engaged in any

10  conduct that would render him liable pursuant to Section 523 (a)(6).  Furthermore, the Court has

11  already concluded that Mr. Abner did not have the requisite intent to deceive, much less the

12  intent to cause malicious injury. As a result, the Plaintiff's claim for relief under Section

13  523(a)(6) is denied.

14

15                              IV. CONCLUSION

16            Based upon the foregoing, the Plaintiff has not met its burden of proof.

17  Consequently, the Plaintiff's request that its debt be excepted from discharge under either

18  Section 523(a)(2) or (a)(6) is DENIED.   The Court shall execute an order incorporating this

19  Decision.

20

21

22            DATED this 28th day of September, 2009.

23            _Smrh/Manchley_

24

25            Honorable Sarah Sharer Curley
              United States Bankruptcy Judge

26

27

28                              12